NABHOLZ CONSTRUCTION CORPORATION *v.* CONTRACTORS FOR PUBLIC PROTECTION ASSOCIATION

07-843                                            266 S.W.3d 689

Supreme Court of Arkansas
Opinion delivered November 1, 2007

*Friday, Eldredge & Clark, LLP*, by: *John Dewey Watson, Jr.* and *Jeffrey H. Moore*, for appellant.

*Hope, Fuqua & Campbell, P.A.*, by: *Ronald A. Hope, David M. Fuqua*, and *Patrick L. Spivey*, for appellee.

PAUL DANIELSON, Justice. Appellant Nabholz Construction Corporation appeals from the circuit court's order directing it to produce certain documents, which the circuit court deemed "public records" under Arkansas's Freedom of Information Act (FOIA), codified at Ark. Code Ann. §§ 25-19-101–25-19-109 (Repl. 2002 & Supp. 2005), and which were requested by appellee Contractors for Public Protection Association (CFPPA). Nabholz asserts four points on appeal: (1) that it was not a proper defendant under the FOIA; (2) that, in the alternative, its records were not public records; (3) that, in the alternative, its records were exempt; and (4) that venue was improper. We reverse the circuit court's order and dismiss.

A review of the record reveals that on March 2, 2007, CFPPA filed a complaint in the Pulaski County Circuit Court against Nabholz, under the FOIA. In it, CFPPA asserted that Nabholz, as general contractor, had contracted with the University of Arkansas for the erection of the Northwest Quadrant Housing

Project on its Fayetteville campus. CFPPA stated that on October 25, 2006, it had requested documents and other items from the University related to the expenditure of public funds for the erection of several public buildings. It further stated that on November 8, 2006, the University responded to its request, offering to furnish documents and certain contracts relating to the construction of public buildings, which included the contract for the Fayetteville housing project.

According to the complaint, CFPPA, upon inspecting and copying the documents furnished by the University, extended its request to inspect certain documents[1] not previously disclosed, to which the University responded:

> (2) To the extent that supporting documentation for pricing of contracts and change orders is available it would be maintained in the files which you will review. However, it is more likely that such records would be maintained by the general contractor and is not in our files for the projects identified.

> . . . .

> (6) No audits have been performed on any of the jobs refer-enced.

> . . . .

> (10) The amount paid for general conditions is included with each payment request in the schedule of values but otherwise I do

---

[1] The extended request included the following documents, according to the com-plaint: (1) the actual construction file on each of six University projects; (2) the supporting documentation for the pricing of all contracts and change orders; (3) documentation of all monies spent on the projects, including the actual checks written or check registers, together with a schedule of all payments and ledgers; (4) the monthly billings with the supporting schedules of values for all jobs; (5) the calculations of savings from the guaranteed maximum proposal, together with documentation for each job; (6) the results of all audits performed on any of the jobs; (7) the documentation of any costs savings returned to the owner for each job; (8) documentation of the scope of work and the square footage for each project; (9) documentation of the labor burden stated as a percentage for each project; (10) complete supporting documentation for the general conditions portion of the job for each project, including the amount paid for general conditions on the job as well as supporting schedules for each individual item charged to general conditions for the potential project; (11) documentation of bond costs for each project; and (12) any schedules and printouts available from information stored on computers regarding each of the projects.

not believe that our records of payment exist in our files for any individual items charged to general conditions.

CFPPA stated that after receiving the information in the University's possession, which did not include the information requested by CFPPA in its extended request, it requested the information, relating to the Fayetteville housing project, directly from Nabholz, which refused to release or produce the information.

By its complaint, CFPPA sought the information, which it believed to be in Nabholz's possession and which it believed related to charges by Nabholz for its completion of the Fayetteville housing project. CFPPA contended that the information it believed to be in Nabholz's possession constituted public records under the FOIA and asserted that Nabholz was the custodian of the records, for purposes of the FOIA. It further alleged that Nabholz had violated the FOIA by refusing to make the documents and items of evidence available for copying and inspection. For these reasons, CFPPA sought declaratory and injunctive relief, an in camera review, if necessary, as well as attorney's fees. In response, Nabholz initially moved to dismiss CFPPA's complaint under Ark. R. Civ. P. 12(b)(6) and for lack of venue and later answered the complaint, requesting that it be denied and dismissed.

A hearing was held on the matter, at the conclusion of which the circuit court rendered the following decision:

> The Court takes into consideration, Judge [I]mbers' [sic] opinion, the Fox versus Perroni, where it states that the Supreme Court literally interprets the Freedom of Information Act to accomplish its broad and honorable purpose, that public business be performed in an open and public manner. And it gives broader instruction to it in favor of disclosure. Taking that into consideration following that line of thought, the Court is of the opinion that in the response of Mr. Harrison on December 8, 2006, which is Plaintiffs' Exhibit 4, Mr. Harrison gives the suggestion that leaves this Court with the impression that the general contractor had really placed himself in the position of being the custodian of those documents concerning the contract between Nabholz and the University. Now, whether or not that was intended, this Court isn't sure, but based upon the statement in that Exhibit and the testimony of Mr. Harrison again here today, it appears to this Court, that Nabholz is the custodian of the records concerning that contract pertaining to this Northwest Quadrant Housing Project. Now, for that reason, the Court de-

clares that to be the case. And the Court is not willing to say that Nabholz has knowing [sic] violated the FOIA though. I'm not sure that they knowingly did that. However, the Court believes that Nabholz should produce those requested documents pertaining to all subcontractors, the services provided by those subcontractors, and the charges for the work done by those subcontractors. And I don't think that this will, in fact, be any kind of prohibition or competition in the past. I don't want to give the competitors any advantage, and I think that all of these competitors need to know that this is part of the cost of doing business with the state. However, the Court does not believe that Nabholz should have to give copies of what was called today, take-offs for all worked [sic] performed, if that, in fact, infringes upon the competition with others, the Court will not require that. But, excluding those take-offs, the rest of the information requested, as that pertains to who are the subcontractors here, plus services those contractors provided, and what they charged for them, that appears to this Court, to be public business. If there is some dispute as to what would protect Nabholz from divulging competitive information, the Court will review that in-camera, if you still cannot agree on all the documents that should be disclosed, if there is some challenge to that, but if you can follow this general frame work that the list of subcontractors and services provided to others should be disclosed, that is the Court's order. The Court will not require any party to pay the other's attorney's fees, though.

Following the hearing, the circuit court entered its written order, in which it found that venue was proper in Pulaski County and that Nabholz was the custodian of the desired records. It further found that the items requested by CFPPA were public records, but that the "documents regarding Defendant's takeoffs, labor burdens charged and bonding costs [fell] within A.C.A. § 25-19-105(b)(9)(A) as they [were] files which, if disclosed, would give advantage to competitors or bidders." The circuit court then denied Nabholz's motion to dismiss and found Nabholz not guilty of any misdemeanor, as it had not knowingly violated the FOIA. Finally, the circuit court ordered Nabholz to immediately produce the documents requested by CF-PPA, "including, but not limited to, the documentation to support the general conditions and the subcontracts and supporting documentation, with the exception of the takeoffs, labor burdens and bond costs[,]" which the circuit court had found to be excepted. Subsequent to its final order, the circuit court granted Nabholz's motion for

stay pending appeal. In addition, in a *nunc pro tunc* order, the circuit court granted CFPPA attorney's fees of $4,000. Nabholz now appeals.

Nabholz, for its initial point on appeal, argues that it was not a proper defendant under the FOIA for two reasons. It first contends that it was not the statutory custodian of the records because its mere possession of the requested documents did not equate to administrative control. Second, it urges that it is a private organization, not supported by or expending public funds, whose mere receipt of money in exchange for services provided to the University was insufficient to render it a proper defendant. CFPPA responds, asserting that the clear progression of the law has been that records of public business are subject to disclosure even when the records are not in the custody of the state actor. It asks this court to hold that a private entity, having actual possession of the records requested, can be a custodian within the meaning of the FOIA.

This court liberally interprets the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *See Fox v. Perroni*, 358 Ark. 251, 188 S.W.3d 881 (2004). Furthermore, we broadly construe the FOIA in favor of disclosure. *See id.* Arkansas Code Annotated § 25-19-105(a)(1)(A) (Supp. 2005) provides that "[e]xcept as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records." Subsection (a)(2)(A) provides that "[a] citizen may make a request to the custodian to inspect, copy, or receive copies of public records." Ark. Code Ann. § 25-19-105(a)(2)(A). Pursuant to subsection (d)(2)(A) of the statute, "the custodian shall furnish copies of public records if the custodian has the necessary duplicating equipment," upon request and payment of a fee as provided in subsection (d)(3). Ark. Code Ann. § 25-19-105(d)(2)(A). In the instant case, CFPPA presented a request to Nabholz for certain records, which pertained to the construction of the University's Fayetteville housing project.

■ We have held that for a record to be subject to the FOIA and available to the public, it must be (1) possessed by an entity covered by the Act, (2) fall within the Act's definition of a public record, and (3) not be exempted by the Act or other statutes. *See Legislative Joint Auditing Comm. v. Woosley*, 291 Ark. 89, 722 S.W.2d 581 (1987). The question presented here is whether

Nabholz is an entity covered by the Act, such that suit against Nabholz is even proper. While our review of the record reveals that Nabholz appears to be in possession of the records requested, we cannot say that it is an entity covered by the FOIA, which would render it subject to suit under the FOIA.

A review of our jurisprudence reveals that in previous cases, the FOIA request being reviewed was directed to a state agency or public entity covered by the Act and not to a private corporation, such as Nabholz. *See, e.g., Pulaski County v. Arkansas Democrat-Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007); *Ryan & Co. AR, Inc. v. Weiss*, 371 Ark. 43, 263 S.W.3d 489 (2007) (request directed to the Department of Finance and Administration); *Harris v. City of Fort Smith*, 359 Ark. 355, 197 S.W.3d 461 (2004); *Nolan v. Little*, 359 Ark. 161, 196 S.W.3d 1 (2004) (request directed to the Arkansas State Plant Board); *Fox v. Perroni, supra* (request directed to a circuit judge); *Arkansas Ins. Dep't v. Baker*, 358 Ark. 289, 188 S.W.3d 897 (2004); *Arkansas Prof'l Bail Bondsman Licensing Bd. v. Frawley*, 350 Ark. 444, 88 S.W.3d 418 (2002); *Orsini v. State*, 340 Ark. 665, 13 S.W.3d 167 (2000) (request directed to the Department of Correction); *Bryant v. Weiss*, 335 Ark. 534, 983 S.W.2d 902 (1998) (request directed to the Governor and the Department of Finance and Administration); *Arkansas Dep't of Fin. & Admin. v. Pharmacy Assocs., Inc.*, 333 Ark. 451, 970 S.W.2d 217 (1998); *Arkansas Dep't of Health v. Westark Christian Action Council*, 322 Ark. 440, 910 S.W.2d 199 (1995); *Swaney v. Tilford*, 320 Ark. 652, 898 S.W.2d 462 (1995) (request directed to the Arkansas Development Finance Authority); *Byrne v. Eagle*, 319 Ark. 587, 892 S.W.2d 487 (1995) (request directed to the Arkansas Development Finance Authority); *Johninson v. Stodola*, 316 Ark. 423, 872 S.W.2d 374 (1994) (request directed to the Pulaski County Prosecutor); *Furman v. Holloway*, 312 Ark. 378, 849 S.W.2d 520 (1993) (request directed to the Arkansas Department of Correction); *Troutt Bros., Inc. v. Emison*, 311 Ark. 27, 841 S.W.2d 604 (1992) (request directed to the sheriff of Craighead County); *Bryant v. Mars*, 309 Ark. 480, 830 S.W.2d 869 (1992) (request directed to the Attorney General); *Young v. Rice*, 308 Ark. 593, 826 S.W.2d 252 (1992) (request directed to the City of Little Rock's personnel office); *Hengel v. City of Pine Bluff*, 307 Ark. 457, 821 S.W.2d 761 (1991); *Snyder v. Martin*, 305 Ark. 128, 806 S.W.2d 358 (1991) (request directed to the Motor Fuel Tax Section of the Department of Finance and Administration); *Arkansas Gazette Co. v. Goodwin*, 304 Ark. 204, 801 S.W.2d 284 (1990) (request directed

to the Arkansas State Police and the Sixth Judicial District Prosecutor); *Gannett River States Publ'g Co. v. Arkansas Judicial Discipline & Disability Comm'n*, 304 Ark. 244, 801 S.W.2d 292 (1990); *City of Fayetteville v. Edmark*, 304 Ark. 179, 801 S.W.2d 275 (1990); *Martin v. Musteen*, 303 Ark. 656, 799 S.W.2d 540 (1990) (request directed to the City of Rogers's Chief of Police); *Gannett River States Publ'g Co. v. Arkansas Indus. Dev. Comm'n*, 303 Ark. 684, 799 S.W.2d 543 (1990); *Arkansas Highway & Transp. Dep't v. Hope Brick Works, Inc.*, 294 Ark. 490, 744 S.W.2d 711 (1988); *Blaylock v. Staley*, 293 Ark. 26, 732 S.W.2d 152 (1987) (request directed to the Pulaski County Clerk); *Legislative Joint Auditing Comm. v. Woosley, supra*; *Ragland v. Yeargan*, 288 Ark. 81, 702 S.W.2d 23 (1986) (request directed to the Commissioner of Revenues).

In the instant case, Nabholz is an Arkansas corporation and is not an entity of the state. As such, it alone cannot be sued under the Act and directed to turn over documents under the Act.[2] While we liberally construe the FOIA in favor of disclosure, we are also aware of the need for a balancing of interests to give effect to what we perceive to be the intent of the General Assembly; in doing so, we must take a common-sense approach. *See Bryant v. Mars*, 309 Ark. 480, 830 S.W.2d 869 (1992). Indeed, we have held that we will not interpret a statute to yield an absurd result that defies common sense. *See National Home Centers, Inc. v. First Arkansas Valley Bank*, 366 Ark. 522, 237 S.W.3d 60 (2006). Were we to hold in this case that Nabholz, a private corporation, had to comply with a request under the Act, it would then be in the position of making a crucial decision under the FOIA, that is, whether or not the requested records constitute public records and are subject to disclosure. We cannot say that such was the intent of the General Assembly.

That being said, we render no decision as to whether the requested documents are or are not public records, subject to disclosure under the FOIA. The question still remains as to whether the documents could be considered under the "administrative control" of the University, such that they would be subject

---

[2] We noted in *Sebastian County Chapter of the American Red Cross v. Weatherford*, 311 Ark. 656, 846 S.W.2d 641 (1993), that we had previously applied the FOIA in several instances in which private entities had received public funds. However, in each instance, the request for the records was directed to a public agency or entity covered by the Act and not to the private entity itself.

to disclosure, if found to be public records. In addition, we note that we will not permit the circumvention of the FOIA by the simple "hand-off" of documents to entities not covered by the Act. *Cf. City of Fayetteville v. Edmark*, 304 Ark. 179, 801 S.W.3d 275 (1990). Nevertheless, in the instant case, CFPPA filed suit not against an entity that would be covered under the Act, but solely against Nabholz, a private corporation. Therefore, because CF-PPA did not bring suit against an entity covered by the FOIA, we reverse and dismiss the matter, along with the circuit court's order granting attorney's fees.[3]

Reversed and dismissed.

---

[3] Because we reverse on Nabholz's first point, there is no need to address its remaining points on appeal.